```
STATE OF WISCONSIN   CIRCUIT COURT   MILWAUKEE COUNTY
                         BRANCH 14
```

_____

ALFONSO MORALES,

        Petitioner,

  vs.                       Case No. 20 CV 5352

CITY OF MILWAUKEE, et al.,

        Respondents.

_____

    MOTION HEARING had via Zoom in the above-entitled cause before the HONORABLE CHRISTOPHER R. FOLEY on the 19th day of May, 2021.

PRESENT:

    GIMBEL REILLY GUERIN & BROWN, by
    MR. RAYMOND DALL'OSTO, MR. MICHAEL GUERIN and
    MS. BRIANNA J. MEYER, Attorneys at Law,
        appeared on behalf of the Petitioner,
        present via ZOOM;

    MR. NATHANIEL CADE, JR., Attorney at Law,
        appeared on behalf of the Respondents.

**Exhibit 2**

1  THE CLERK: This is 20 CV 5352, Alphonso Morales vs.
2 City of Milwaukee, et al. Can we have appearances, please.
3  MR. DALL'OSTO: For Alphonso Morales, the petitioner,
4 Ray Dall'Osto and Brianna Meyer of Gimbel, Reilly, Guerin and
5 Brown. Also at our table here is Mike Guerin of the same law
6 firm. Our partner, Frank Gimbel, was going to be here but has a
7 medical issue which makes him indisposed this morning. And also
8 at counsel table is Alphonso Morales.
9  THE COURT: We're getting feedback from somebody.
10 Mr. Tierman, I think we are getting feedback from your phone.
11 Thank you.
12  UNIDENTIFIED SPEAKER: Yes, sorry. I'll mute.
13  THE COURT: Mr. Cade, please.
14  MR. CADE: Good morning, your Honor. Attorney
15 Nathaniel Cade appearing on behalf of the respondents, Fire and
16 Police Commission and the City of Milwaukee.
17  THE COURT: All right. We're here on chief Morales'
18 motion to compel the City to reinstate him as chief of police.
19 The parties have submitted multiple materials, all of which I've
20 reviewed.
21  The parties received a letter from me sometime last
22 week indicating my concerns about this process. So I will let
23 the parties make whatever record they want. I'd ask you not to
24 repeat everything you told me in your submissions. I have read
25 all of it. I have a different view of the parties with respect

1 to the import, if you will, of the dispute about the
2 validity/admissibility of statements in the affidavit that was
3 submitted by Mr. Gimbel. I, frankly, don't think it has much of
4 an impact on what happens here this morning; but make whatever
5 record you want to make about that.
6 So, Mr. Dall'Osto, please.
7 MR. DALL'OSTO: Okay. Thank you, your Honor.
8 First of all, relative to the initial objections posed
9 by Mr. Cade for the respondents, I submitted subsequently an
10 affidavit of my own to supplement Mr. Gimbel's, which I think
11 clears up any issue. And I think we'd maintain that, as the
12 Court maybe is indicating, I don't think those objections were
13 well placed.
14 Subsequently to your letter, Mr. Cade filed a response
15 to -- an additional response to the motion to enforce. And
16 Mr. Cade on behalf of the respondents, City of Milwaukee and the
17 Fire and Police Commission, really cites no case or statute that
18 your Honor does not have jurisdiction, power and authority to
19 enforce its orders.
20 Your Honor is aware from other cases and your
21 experience as a jurist over the years that the judicial remedies
22 fall into four major categories. And this is the Johnson
23 Controls case, 2003 WI 108 at Paragraph 40: Number 1, damages;
24 Number 2, restitutionary remedies; Number 3, coercive remedies
25 such as injunctions backed by the court's contempt power; and,

four, declaratory remedies. And your Honor's decision in
December was a declaratory remedy and judgment by the parties
before the Court; that is, finding that the FPC's actions of
August, 2020 were contrary to statute and the constitutional
rights of chief Morales. And it's well-established law that
when a declaratory judgment is entered against government
officers, it's the practical equivalent of an injunction against
those officers. That's the U.S. Supreme Court in the Samuels
case, 401 US 66 at 72.

So your Honor does have, first of all, jurisdiction,
both personal and subject matter on this; your Honor has
authority to enforce its orders; and, you have the power to do
that. And the respondent's citation saying, well, 62.50 of the
statutes doesn't allow you to enforce your order is incorrect on
the law and on the facts of this case.

Significantly, the City never appealed from your
December, 2020 order. It is the law of the case. And we have
asked and we have asked the City in meeting with Mr. Gimbel and
I and then assistant city attorney Davidson in December right
after your decision we asked of the City, of the respondents,
City and FPC, in our letter of January 17th, which Ms. Meyer and
I and Mr. Gimbel drafted and got it over to Mr. Davidson that,
Number 1, chief Morales be reinstated; or, if the City does not
want to reinstate him for whatever reason, that we reach some
accommodation and agreement. He has a contract that is good

5

1 through January of 2024.

2 We never received any written response from the City as
3 far as an offer. There were oral discussions. And, as we
4 pointed out in the affidavit submitted to your Honor, which I
5 won't repeat because of reasons of disarray and whatever else,
6 the City attorney's office and Mr. Davidson were not in a
7 position to adequately, apparently, present any kind of proposal
8 either to return or to settle this.

9 Mr. Cade was brought in and later approved by the
10 common counsel to act as attorney for both. And for a period of
11 time, we didn't know before then, is it Mr. Davidson that has
12 authority? Is it Mr. Cade? So what I did, we reiterated -- I
13 reiterated to Mr. Cade in early March on the 2nd and the 9th
14 that the chief is ready, willing and available to return to work
15 at that time. Mr. Cade on behalf of the respondents did some
16 inquiry and said there may be tension issues.

17 So I took it upon myself to be sent to me an old city
18 attorney's opinion and some memoranda. So I took it upon myself
19 and chief Morales as a beneficiary and member of the ERS -- the
20 Employees' Retirement System -- to contact the chair of the ERS
21 who directed me to Mr. Allen who is the executive director. And
22 we met in this room back in March. And there is not an
23 impediment to chief Morales being reinstated as chief of police
24 today.

25 Again, Mr. Cade's response talks about the need to have

1   an opinion obtained from ERS or ERISA -- that's the employee
2   retirement insurance law pension -- in other words, specialist
3   on this.  We asked -- or I asked Mr. Allen, how does that
4   happen?  Who would request this?  I don't know if that request
5   has been made.  He did say it would take about three to
6   four weeks to have an opinion turn-around.  And, again,
7   reinstatement is not dependent on the pension of him.
8   Reinstatement can happen now.  And the chief is ready -- If the
9   Court adopts our motion and orders him to be reinstated tomorrow
10  or next week, he's ready to go.
11          We have both before your Honor's letter of May 11th and
12  a number of occasions I spoke with Mr. Cade, I spoke and met
13  with Mr. Davidson.  Mr. Davidson has left the City attorney's
14  office, I understand, recently.  And there has been a motion for
15  substitution of counsel, your Honor, which brings Mr. Cade in as
16  representative for both the City of Milwaukee, respondent, and
17  the Fire and Police Commission.  So we have discussed possible
18  settlement before.  And there was no movement before, no
19  response to our January 17th letter.
20          On that end, Mr. Cade and I did have extensive
21  conversations both before your letter and since your letter.
22  And there is not an agreement.  And I won't go into specifics of
23  what that is because it's a -- near a year's salary, we'll leave
24  it at that.  Less than -- Yes.  That's basically where the
25  City's position was.  You've had -- Chief Morales has been out

1  of his position and had a wage differential for a period of time
2  and he's ready to go back.
3          Your Honor, addressing Mr. Cade's Brief at Page 3, this
4  is his Brief that was filed most recently, he says that the
5  Court doesn't have jurisdiction and the City can't comply with
6  an order if you would issue one to reinstate him.  Well, that's
7  a red herring and it's wrong.
8          If you remember, your Honor -- not wanting to age you,
9  but you're a contemporary of mine -- you remember chief Robert
10 Ziarnik who retired and then unretired four months or
11 five months later and was appointed as chief.  So a special
12 charter ordinance was done and it was checked then.  So that can
13 be done.  And there could be also a modification or some kind
14 of -- having chief Morales come back in and have some kind of
15 monetary settlement, even if he can't be, quote, brought back
16 in, like the Ziarnik situation is.  But I think the City in its
17 most recent response creates a straw-horse issue saying, well,
18 it's important for your Honor to note that chief Morales retired
19 after the FPC's illegal decision in August; and, therefore, that
20 makes a difference.
21         I think all of us are old enough and are reasonable to
22 know that if chief Morales had been terminated from the
23 Department and was on unemployment comp or demoted to captain --
24 as the FPC illegally did after it removed him as chief -- the
25 City would be taking the same position as they've taken all

8

1    along: We don't want him back. And that's why we filed
2    originally the action under 62.50 which resulted in your Honor's
3    decision in December and resulted in our motion now wanting to
4    enforce that decision. And item three at Page 4 of Mr. Cade's
5    most recent Brief on behalf of the respondents, he was saying
6    that your Honor ordered that chief Morales return.
7             That might disqualify the ERS because of the Internal
8    Revenue Service rulings on that end. Now, neither Mr. Cade nor
9    I or anyone at my law firm are ERISA specialists. However, from
10   talking with people who are, as well as meeting with Mr. Allen,
11   I don't believe that is an impediment to his being returned,
12   just as it was not with chief Ziarnik.
13            As my understanding is from others who are in the
14   know -- other attorneys, that is, not in my office -- that the
15   IRS disqualification for someone who retires and then is brought
16   back into service within a few days or a week after was
17   initially brought about by a certain, if you want to call it,
18   arranged retirement that stands in the southwest and west coast,
19   which then caused them to put that rule in place, you don't have
20   such a thing here because there was no -- the removal of chief
21   Morales as police chief was done. And that is not something
22   that was a wink-wink, all right, we're going to have you go out
23   one day and then you come back in the next week. So they had
24   not reinstated him and apparently don't want to. That's why we
25   approached your Honor to enforce your order from last December.

1        Finally, at point four -- or almost finally -- point
2  four of -- Roman Numeral IV of his most recent Response Brief,
3  it talks about a January 14th text message from my partner,
4  Frank Gimbel, to Mr. Davidson who was then the sole attorney on
5  the case to take no action on the retirement status. So we've
6  had an opportunity to exchange initial settlement positions.
7  And that happened three days later with a letter that was
8  delivered to Mr. Davidson.

9        So this was not somehow some waiver of saying we're not
10 ready and able to come back. Mr. Davidson knew in December and
11 in January and the respondent knew February, March, April and
12 May that the chief was ready, willing and available to return
13 and desirous of returning to work as chief. And he remains so
14 today.

15       So, your Honor, if the City has had and the City
16 respondent has had five months to seek answers from its ERISA
17 counsel and the ERS has been brought in in March so they've had
18 at least since March to do so and ERS is a separate entity, I
19 don't believe ERS is represented under the charter that was
20 given to Mr. Cade as I don't believe he represents them; but I
21 know there was some issue about whether or not we should have
22 talked with them, chief Morales has the right to talk and meet
23 with the ERS. The chair of the ERS said we should meet with
24 Mr. Allen and referred us over there. So that's why we met with
25 them. And Mr. Allen gave us the bottom line which is: There is

1  no settlement from an ERS or ERISA pension plan aspect to your
2  ordering the chief return forthwith.
3      So for those reasons, your Honor, as well as everything
4  we stated in the previous submission, we would ask the Court to
5  order that chief Morales be returned to his position as he was
6  on August 5, 2020 as chief of police of the City of Milwaukee
7  with the same salary, benefits, authority, discretion and powers
8  that he had at that time.  Thank you, sir.
9      THE COURT:  Thanks.  Mr. Cade, please.
10     MR. CADE:  Thank you, your Honor.  I have great respect
11 for Ray Dall'Osto, but he is conflating multiple concepts and
12 ideas.  And I think he is just flat wrong.  I'll address a
13 couple of points that he raised first, Judge, and then a few
14 more.
15     First, this is not ERISA.  ERISA applies to private
16 plans; it does not apply to public plans.  Again, Mr. Ray
17 Dall'Osto does not know that because he never investigated that.
18 He's conflating that.  Second, he raises chief Robert Ziarnik.
19 Interestingly, he raised that also to Jerry Allen.  Mr. Allen
20 did not know who Ziarnik is.  I did not know who Ziarnik is.  So
21 it wasn't as if somehow Ziarnik was the answer.  In fact, chief
22 Ziarnik retired as an inspector.  The next level above that is
23 captain and then chief.  He was then asked to come and be the
24 chief.  So he came in in an entirely different position.  He was
25 not being put back into the same position for purposes of IRS

Rule 401(a). So for Mr. Dall'Osto to make that suggestion is just flat wrong.

Third, Jerry Allen did not say there was no impediment. He said there's no impediment from an employment standpoint, which we all agree. In fact, that's why Exhibit 4 to my affidavit, I attached Ray Dall'Osto's affidavit where he acknowledges that ERS does not have any standing to stay on the employment side, period. So let's drop ERS out of this, let's drop Jerry Allen out of this.

The issue, Judge, at the end of the day is that chief Morales retired. They are correct that he had a contract. And just like whether this was a football player or anybody else who had a contract, Morales retired. If tomorrow Aaron Rodgers says, I retire because I'm not going to play for the Packers anymore, he can't turn around three days later and say, make me unretired; you shall order it. That's what Morales is saying. He's saying another authority can order the Green Bay Packers to unretire Aaron Rodgers. That is not the case. Chief Morales had every opportunity to work as captain and pursue his action. Instead, he chose to take his ball home and retire. And that's perfectly fine. That's his choice.

Now, if that means that chief Morales has to turn around and file a separate lawsuit and claim constructive discharge or something else, that's for a different court. The only thing before this Court is: Can he be reinstated to the

position he was in as of August 6th?  The answer is, yes, the Court can reinstate him.  However, the intervening was he retired.  That is the point that the petitioner keeps skipping over.  If nothing had changed, had he not retired, we wouldn't be here, Judge.  The demotion would have occurred.  We agreed there was not due process.  We'd be back.  He's now saying, oh, I'm done, I don't want to serve as captain, I don't want to deal with the City of Milwaukee.  You don't get to after the fact say, oh, I've changed my mind.

And I thought of an analogy.  And I wanted to use an analogy, Judge, that I wanted it to be as heinous as possible on purpose.  Imagine a police officer who is charged with a violent crime, say a rape.  FPC does their investigation.  They suspend that officer, maybe even terminate.  Prior to the decision being rendered, that officer turns around and says, I'm retired because I'm going to keep my pension.  Before you get a chance to fire me, I'm going to keep my pension.  Then three months, six months later, whatever time period, the rape case goes away, the victim recants, maybe the officer is found innocent.

Would we turn around and say to that same officer, you can unretire because you chose to retire?  No.  That sets a precedent for any officer who is accused of a crime or any officer accused of some misconduct or anything else just saying, I retire; and then when it blows over says, I unretire.  That is not what 62.50 permits.  It simply says the court shall

1 reinstate if they were improperly demoted, fired or suspended.
2 And we agree that as of August 6th, chief Morales was improperly
3 demoted to captain. Thirty-six hours later, approximately, he
4 says, I retire. Now, if the complaint is he was forced to
5 retire, that's a separate lawsuit, separate court. That is not
6 62.50.

7 A couple more points, Judge. First, as I said, he has
8 a remedy in another court if he's going to argue constructive
9 discharge. Second, there weren't benefits for chief Morales to
10 retire as a captain compared to as chief. The only difference
11 was he didn't get to put on the hat and say, I retired as chief.
12 That's it. He got vacation and sick pay that he would never
13 have received as chief, he wasn't entitled to; but, as captain,
14 by retiring thirty-six hours later, he received that.

15 He also has all of the money that's available to his
16 retirement. We're not talking, Judge, that, hey, had he retired
17 as chief, his pension would be higher. ERS gave him all of the
18 credits. So between the time period and the wage, he is at the
19 highest level that he would be at. The only way his pension is
20 higher is if he were to continue to work. But in terms of
21 retirement, he's exactly where he needs to be. There is nothing
22 that is held out or another number as of August 6th that has to
23 somehow be put back in there.

24 As I noted in my brief, we don't disagree that the pay
25 differential between August 6th and his retirement -- whatever

1  couple hundred dollars at best that is -- is appropriate.
2  Arguably, if that's the case, he would owe the City money
3  because he got about $7,000 for taking these sick and vacation
4  times.  But at the end of the day, the Court does have the
5  jurisdiction to reinstate him as of August 6th.  However, the
6  Court does not have jurisdiction once he retires to order the
7  City to unretire him.  That's a separate court.  That is a
8  separate lawsuit.  That is what the issue is here.  Thank you,
9  your Honor.
10             MR. DALL'OSTO:  Brief reply, your Honor?
11             THE COURT:  Sure.  I will say to Mr. Cade that --
12             MR. DALL'OSTO:  Okay.  I'll let you talk.
13             THE COURT:  (continuing) -- you know, my obligation is
14  to follow the law.  I understand that.  But my emotional
15  reaction to what you're saying is this:  The City wants to use
16  their illegal demotion and resultant coerced resignation as a
17  sword to cut off his access to a statutory remedy that he
18  otherwise would have been entitled to.  Is that --
19             MR. CADE:  I agree, Judge.  But the distinction is he
20  retired.  Had he stayed on as captain, we wouldn't be here,
21  right?  He chose -- So it was on the City.  We did something
22  wrong.  And then he said, I'm going to retire.  Okay.  That
23  falls on him.  And, as I said, Judge, when you talk about
24  emotional, we're not using it as a sword.  I am saying that it
25  applies across the board.  This is not just chief Morales, this

is anyone else who works for police or fire who retires.

If the court says, well, no, they can unretire and a court can order it, now you have, again, as the hypothetical -- and I wanted it to be as heinous as possible -- for someone to do that, chief Morales has every right to go and file a lawsuit and say constructive discharge. Every right.

So he's not without a remedy. It's not as if somehow you ruled against him. He -- You know, oh, well. He has every right to take that to a court to determine, did the City's demotion force you to retire? That issue is not before you. You do not have the right under 62.50 to rule on that issue. All you have the right to do is say, was he demoted improperly? We agree. The only factor that's different is he chose to retire, the City didn't make him. And if the argument is the City did make me, constructively that is for a separate court and for a separate lawsuit. That's it.

I understand the emotional aspect, Judge. But, you know, if this is going to be applied across the board to any officer on a go-forward basis, it has to be applied uniformly.

THE COURT: You know, I think that's the interesting legal issue. On this record or on public accounts of this unhappy affair, there is no doubt in anybody's mind that his resignation/retirement was directly related to his unlawful demotion by the Fire and Police Commission in a -- what's the phrase I used -- pervasively flawed proceeding. And, quite

1 frankly, that was polite and reserved language.

2 So trying to make that disconnection if it's legally
3 required -- and I seriously question if it's legally required --
4 you know, is a very, very difficult emotional hurdle.

5 Okay. Mr. Dall'Osto, please.

6 MR. DALL'OSTO: Your Honor, from your long experience
7 both as a litigator and a jurist, you know the old adage when
8 you don't have the facts, you argue the law; when you don't have
9 the law, you raise smoke and try to divert. And Mr. Cade is an
10 able attorney. He's done a good job trying to divert what we're
11 really talking about.

12 Let's go back to his Aaron Rodgers analogy. If Aaron
13 Rodgers retires tomorrow, he can't turn around and sue and say,
14 bring me back. Chief Morales did not retire. Chief Morales was
15 removed contrary to his contractual rights, contrary to his
16 constitutional and statutory rights. The court, as you said,
17 was mild and restrained in its description of what happened, but
18 his rights were totally dishonored.

19 The contract he had with the City which remains was
20 torn up by the FPC, thrown away. And now Mr. Cade says, no,
21 don't mind that, no, no. If Aaron Rodgers was fired tomorrow
22 and has a contract, he has rights under that contract. And
23 chief Morales was removed as chief contrary to the contract,
24 contrary to law, contrary to fundamental fairness and due
25 process, equal protection, whatever.

1  The Court -- This is not a constructive discharge, as
2  Mr. Cade argues.  And, again, trying to make the City somehow
3  the victim or the chief is at fault or the chief was better off
4  retirement-wise when he was a captain rather than chief and he
5  might even owe money to the City if you reinstate him, reinstate
6  him, your Honor.  Enforce your order, please.
7  THE COURT:  Well, as I said, the interesting legal
8  issue is this whole thing about the connection between the
9  retirement/resignation and the illegal demotion by the Fire and
10 Police Commission.
11 I, quite frankly, Mr. Cade, wholeheartedly disagree
12 that the resignation/retirement -- which I would conclude was
13 coerced by the unlawful demotion -- deprives chief Morales of
14 this statutory remedy or negates my authority to -- not only my
15 authority, my obligation -- to grant this relief.
16 You know, whatever the -- I'll go back to something I
17 said earlier.  You know, whatever problems there might be with
18 the IRS, whatever problems there might be with the retirement
19 system, I didn't create those problems; the Fire and Police
20 Commission created those problems by doing what they did.
21 So pursuant to their motion and, quite frankly, more
22 specifically pursuant to the authorities that I cited in my
23 letter to the lawyers, 805.03 and this Godfrey and Kahn case
24 that talks about the court's independent authority to enforce
25 its orders, I am ordering him reinstated.  I will stay that

1  order for forty-five days.  If within those forty-five days
2  there's a settlement in principle -- And, you know,
3  Mr. Dall'Osto keeps saying how long I've been around, et cetera.
4  I'm feeling like I should leave this hearing and go look for
5  cemetery plots.  I'm not wet behind the ears.
6          MR. DALL'OSTO:  You're still younger than me, Judge, I
7  think.
8          THE COURT:  I'm not wet behind the ears.  I don't think
9  he wants to come back.  The City doesn't want him to come back.
10 But for me, from media accounts, it would be an extremely
11 untenable situation.  But he's entitled to this relief.  But I
12 think for the sake of the City, for everybody's sake, I think
13 you're going to resolve this case and I think you should resolve
14 this case.
15         So I'll stay the order for forty-five days.  If you've
16 got a Settlement Agreement in principle, it's been started in
17 the administrative/legislative review process, I will continue
18 the stay.  But if you can't get it settled within the forty-five
19 days, then my order goes into effect, put him back in office,
20 make him the chief and away we go.
21         I assume based on what Mr. Cade says that they may take
22 that time to take a different route, to go find the appellate
23 court or whatever.  But that's my ruling.
24         All right.  Anything else this morning, everybody?
25         MR. CADE:  No, your Honor.  I'm happy to draft the

```
 1  order.
 2          THE COURT:  You'll do the order, Mr. Cade?  Okay.
 3          MR. CADE:  Yes, Judge.
 4          MR. DALL'OSTO:  Your Honor, do you want me to put
 5  together an order and submit it under the five-day rule?
 6          THE COURT:  Mr. Cade said that he was going to do it
 7  and he'll submit it to you under the five-day rule.
 8          MR. DALL'OSTO:  Okay, fine.
 9          MR. CADE:  You'll have it today, Judge.
10          THE COURT:  Thanks, everybody.  Tell Mr. Gimbel I hope
11  he's feeling better.  That doesn't sound too good.
12          MR. DALL'OSTO:  Well, it is gonna be better; but, yes,
13  it's not good now, no.
14          THE COURT:  I didn't mean to overstate it.  It didn't
15  sound pleasant, let's put it that way.
16          MR. DALL'OSTO:  Unpleasant, exactly.  All right,
17  everyone.  Thank you.
18          THE COURT:  Take care, everybody.  Thank you.
19
20                              (END OF PROCEEDINGS.)
21
22
23
24
25
```

```
1  STATE OF WISCONSIN   )
                        ) SS.
2  MILWAUKEE COUNTY     )

3

4

5         I, NANCY ANN BELLINO, Official Court Reporter in and

6  for the Circuit Court of Milwaukee County, do hereby certify

7  that the foregoing is a true and correct transcript of all the

8  proceedings had in the above-entitled matter and the same are

9  contained in my original machine shorthand notes on the said

10 trial or proceedings.

11

12

13 Dated at Milwaukee, Wisconsin on June 11, 2021.

14

15

16

17                 _____

18                           NANCY ANN BELLINO

19                         Official Court Reporter
```